The next case is Bernardino v. Barnes & Noble Bookstores. Your Honors, we have one demonstrative exhibit. I also have paper copies of the exhibit. If the Court would prefer, I can hand out the paper copies in addition there too. They are part of the record, Your Honors. Excuse me, Your Honors. Sorry for the delay. You did provide us with notification that you were going to be putting up an easel this morning. Good morning, Your Honors, and may it please the Court. J. Barnes on behalf of the Plaintiff Appellant Melina Bernardino. Your Honors, this is a case about New York contract law. In New York, and in the Barnes, to start with, it's a case somewhat coincidentally also about our appellate jurisdiction, is it not? I thought you might be asking that question from the previous argument. Yes, there's an issue of jurisdiction. Yeah, I don't always start by asking about appellate jurisdiction. I can't remember a day when the first two cases presented serious issues of appellate jurisdiction, but this one does. So can I maybe start by seeing if we have some common ground? Do you agree that no immediate appeal lies from an order that stays a case pending arbitration? If the case is stayed pending arbitration. And what the defendant asked for in this case in its motion was a stay pending arbitration. Is that not right? That is correct. They asked for a stay, Your Honor. And the magistrate judge recommended granting the motion for a stay pending arbitration, right? That was in the magistrate judge's recommendation. And the district judge then said I accept the recommendation of the magistrate judge and I grant the defendant's motion, right? And he said other things. And then he also said he's closing the case. Yes, Your Honor. Now, don't we have – so up to the point where he says closing the case, we don't have jurisdiction, right? I mean, your argument that we have jurisdiction rests on the judge's statement that I'm granting the defendant's motion and closing – and directs the clerk to close the case. And it rests on what SPA 1, which is labeled as a judgment and is entered, and the last item in it is, like you said, the case is closed. But it doesn't say the case is dismissed. It says the case is closed. That's correct, Your Honor. Don't we have case law saying that closing a case is just an administrative action, a sort of docket control action, and does not bear on the merits of – is not a disposition on the merits? You have case law directing that that is the proper procedure. There is also case law from this circuit that an error in that regard does not deprive this court of jurisdiction over a case. And that's from VRC and then the cell trace communications case. Now, those are cases that are where there is – the district court commits the error of not staying the case but dismissing it. I'm asking about a different question, which is don't we have case law saying that closing a case is not the same thing as dismissing a complaint? Well, Your Honors, our view of what's labeled as a judgment is that it is a judgment and that the case is closed. It's more than administrative. Because it's labeled a judgment, because it was accompanied by motion – by papers from the district court to us. But let me ask, then, a version of the next question in Judge Lynch's line. So if Judge Kaplan's order had omitted the words, close the case, and everything else was exactly the same, would you contend that there's appellate jurisdiction? Well, there's two things there. Yes, because of the word judgment and because the judgment was accompanied when given to us by notice of our rights to appeal. Didn't Judge Kaplan, in colloquy with the parties, specifically say, I understand this is a motion to stay, this is the normal procedure to stay the judgment? In a call, Judge Kaplan said the typical procedure is to – it will be a motion to compel to stay in lieu of arbitration. But then when we got to the end, it was an entry of a judgment where it says the case is closed. And when it is sent to us, it informs us of our rights to appeal. Clerk's office presumably entered a judgment because the close the case language was included in the order. That's a presumption. But, again, we have what is labeled a judgment and says the case is closed. Even if there's ambiguity, wouldn't the appropriate disposition be to send it back for clarity as to entry of a stay in light of the ambiguity? I think that in light of VERC and cell trace communications, this Court still has jurisdictions to determine the merits of the issue of the motion to compel arbitration. Yes, Your Honor. Well, why would – in light of an ambiguity, and I think at best you would be pressing an ambiguity here, why would we not ask the district court what its intention was? Because we have jurisdiction, you have jurisdiction under 1291 in VERC and cell trace. This Court, if it goes back, it's likely to come back in the future. We're going to be here again, and we're here now. After arbitration. You win the arbitration. I mean, that's the whole point of – I mean, it's often a hardship to a party that thinks there's been a serious error in an interlocutory order to have to go through litigation of some sort before appealing it. But the reason for the jurisdictional rule is absent of final judgment. These issues may never have to be resolved. You may get everything you want in arbitration. That is a possibility, Your Honor. But we believe we're here correctly because of the label of the judgment and because it says the case is closed. And Judge Kaplan, obviously from the early call on the case, was aware of those things. And it says his judge – it's labeled a judgment. It says the case is closed. If I could get briefly to – Was the motion that was filed alternatively captioned a motion to dismiss or was it solely a motion to stay pending arbitration? I believe I'd have to refer back to the record, Your Honor. I don't want to make a misstatement. Why don't you take the remaining few minutes of your time and address the merits. On the merits, Your Honors, in New York, a party asserting waiver of a fundamental right must show the intentional relinquishment or abandonment of a known right or privilege. In Kindred, the Supreme Court explained that a court may invalidate an arbitration agreement based on a generally applicable contract defense. And that's what we have here. As long ago as 1908, the New York Court of Appeals said waiver, and I quote, is a doctrine of general application. And it's a doctrine that this circuit, this court, has applied in cases involving fundamental rights. So national equipment rental versus Hendricks, which has not been overruled anywhere. That's not what we said in Meyer against Uber. That's not what we said in Stark against Square Trade just a couple of weeks ago. The idea has been, and it's well supported in New York law, that if someone has an opportunity to review these terms and then places the order, that that's sufficient. Now, I mean, I'm sympathetic to the argument that on the facts here, there may be some considerable ambiguity about what actually happened and what your client actually saw. But are you telling us that the way that you win this case is that we have to overrule cases like Meyer and Square Trade? No, Your Honor. We win under the Meyer standard. We win under the knowing and intelligent waiver standard, which this court has applied in other cases, including a case called national equipment rental versus Hendricks that involved a written contract to a more sophisticated party that was signed by the more sophisticated party and that was clearly in the contract itself. And speaking of waivers, what are we to do with the fact that you specifically said to the district judge or you or your predecessor counsel, whoever was there on your client's behalf, told the district court that you did not want a hearing into the possible ambiguities that arise from the fact that the defendant submitted all this messed up evidence, that first the defendant submitted one kind of thing and then they submitted a different kind of thing and so that was a different, that they were wrong in the first place about what your client saw and now they had something else. And it might have, I had the impression reading through the record that, gee, maybe this doesn't meet a summary judgment standard because even if you have no evidence affirmatively about what your client saw or didn't see, they've already submitted two contradictory things. And it might seem that then there should be a hearing or even a trial or even a jury trial about what the actual facts were regarding the supposed agreement to the terms and conditions. But you said you don't want that. The judge raised that possibly, the magistrate judge raised that possibly. He said, no, we don't want that. We want the court to decide this as a matter of law. Are we then in a position where we have to decide, assuming we have jurisdiction, as a matter of law whether on the showing that was there, we think they made an adequate showing that your client had an opportunity to consent or not to the terms and conditions? Your Honor, I believe you said it well about there's not enough here. You mentioned you thought from this evidence there might not be enough for summary judgment. There might not be enough here to grant a summary judgment-like ruling. But normally what happens, if there's not enough evidence to grant a summary judgment-type ruling, you get to have discovery in a trial. And you said we don't want that. We want you to decide it on the record that's here. So is it not the case that we then on appeal, if we have jurisdiction, have to decide whether on the record that's here, we think they've carried by some sort of burden for ponderance or whatever their case about what it is that your client saw? I think there's two questions there. The first is to accept the evidence as is. And that's a de novo review. And that's where this exhibit comes in, where in step one Barnes & Noble creates the impression for a reasonably prudent Internet user that they are not going to be bound by the terms of use. And then they come in later in step four and change the rules after they've told, set up this situation where they don't believe they're going to be bound. No, they changed the facts. They said this isn't, we made a mistake. This affidavit was incorrect. Here's another affidavit. And then your position, it seemed to me, to the district court was not, that doesn't suffice for a summary judgment type ruling, but we want it to be decided that, therefore, we win the issue. Not that they don't get summary judgment, but now we can take discovery, we can depose the person who submitted the first affidavit, we can depose the person who submitted the second affidavit. We can get to the bottom of this. But you didn't ask for that. And I'm wondering if one reason is that you had screenshots from the relevant period that are not part of the record, because I noticed that there were screenshots that were submitted by your side that predate any of these positions by the other side. So I'm wondering if you really didn't want to get to the bottom of what the actual website actually looked like. No, Your Honor. That is not the case. That's not the case. But that is what you did, in effect, is you decided not to conduct further, not to ask for further discovery or a hearing. You decided instead to ask the court to decide yes or no on the basis of the evidence that was there. Because we believe that based on the evidence that was there, we should have prevailed as it was and that we wanted to move on with the case based on we thought we had a strong position, still think we have a strong position about where we were. If we have jurisdiction, then you want us to decide whether, based on this record as it is, the defendant carried its burden with respect to showing what the — even if there are contradictions, that we have to decide which is the truth. Yes, Your Honor. That's what you're asking us to do. Your Honor, if I may address the question about whether we had a screenshot or not. We did not have a screenshot. I'll take your word for it. Okay, that's fine. We have screenshots now that it doesn't appear as this. But I want to know. Today. I want to know. You are asking us to make essentially a factual ruling about what — I don't know whether the district judge was clearly erroneous as to its finding that the second affidavit was accurate and that we should find, essentially as a matter of law, we should find that was clearly erroneous and that, in fact, the conditions are different than what the Barnes & Noble affidavit said it was. I think there's two levels of review. The first is just accept it as it is and does it meet the standards. The second is the clear error standard of review is whether it was admissible and sufficient to get into evidence. So I think there's two questions there. And that's what we're saying. All right. You're raising the question that they should never have been allowed to submit the second affidavit in the first place. That's a different issue. Absolutely. Yes. And based on the timing. That I understand. Okay. We'll hear from your adversary. Thank you, Your Honor. Good morning, Your Honor, and may it please the Court. I'd like to begin with the threshold issue of jurisdiction. And Judge Kaplan's order, as Your Honor was alluding to quite clearly, is not appealable because he did not dismiss the complaint. And this Court in Cap Gemini made very clear that it would require an official dismissal of all claims before reviewing an order of compelling arbitration. Closing the case, as Your Honor said, was merely a docket management tool that Philanto said. And as Your Honor has said, this Court has a number of times made clear that merely closing a case and entering judgment does not on its own confer appellate jurisdiction. Counsel, when the case – when that case-closed language showed itself and the judgment issued, did you seek any kind of clarification with the district court that this was in fact a motion to stay and that the case should be stayed pending arbitration rather than dismissed? We did not, Your Honor, because we didn't see the need to. The motion, the question we got earlier, what was our motion? It's a notice of defendant's motion to compel arbitration and to stay proceedings pending arbitration. No or in the alternative. No or in the alternative. Dismiss. And from the get-go, as we know, you know, Katz requires a stay of proceedings when arbitration is compelled. Arbitration is compelled. There's a stay of proceedings. We sought that stay. As, again, was alluded to earlier, Judge Kaplan was well aware from the get-go what was happening here from that court conference at A56 to 58 where it's very clear. I mistakenly – I'll raise my hand – I mistakenly said dismiss. And Judge Kaplan said, wait a second, that's not how this works. You move to compel and stay. And the handwritten order from that very day, Judge Kaplan says, per teleconference today, the anticipated motion will be one to stay the action pending the outcome of arbitration. And on that basis, he enters a scheduling order. And then, in fact, we make this motion, docket 39, motion to compel and stay. It's at A151. Below it was docket 39. And then the magistrate judge recommends at SPA 32 that the court grant our motion to compel and stay, referring to docket number 39. And then Judge Kaplan's order grants docket at SPA 3. And Judge Kaplan's order grants docket number 39, which, again, is this motion to compel and stay. And obviously, there's nothing in his order that says anything about dismissal. So to us, it was clear. We shouldn't be here. Right? If we think that the case closed language and the issuance of the judgment were enough to be read as a dismissal, an improper dismissal, clearly, under Katz, do you agree then that we have appellate jurisdiction to review the merits of the arbitration decision? Well, if it's wrong, it's wrong. And then I guess if the court is wrong, I have seen certainly cases before where the court has, whether it was right or wrong, determined that the court below dismissed and then has proceeded to listen to the merits. Katz did it. Right. And so I have seen that. Breyer did it. I would say that it's possible we find ourselves here because the court has done that, and it emboldens folks to come and say they'll listen to my merits. So I'm more than prepared to discuss the merits because the court below got it right. But the reality is that I think there's something to be said for having sort of the courage of convictions in saying if there's no jurisdiction, there's no jurisdiction, and we stop. But I'm obviously happy to address that. I mean, it would have had to have been a sua sponte dismissal, given that you did not move to dismiss. Correct. Correct. And there's no hint of that. Judge Kaffen closed the docket because he didn't want it sitting open on his docket while we were sitting there arbitrating. That's it. And we've said, I think repeatedly, that there's no jurisdictional significance to marking the docket as closed. Correct. Many, many times circuit courts, other circuit courts have said it as well, specifically with respect to arbitration. And this Court a few months ago in Avaris said that it has no significance. So absolutely. This one is very clear. Again, we shouldn't be here. But I'm obviously happy to address the merits if the Court is going to reach the merits. Well, we're not going to make a ruling right here and now. So then I'll address the merits. Consider it and think about it and deliberate on the questions. So you can either address the merits or not as you choose. Thank you, Your Honor. I will do that. So turning to the merits if the Court ends up reaching them, it's quite clear that to arbitrate her claims, that she had reasonable constructive notice. In Meyer, which is obviously a case that sets the standard here, the question is whether the website provided reasonably conspicuous notice to a reasonably prudent smartphone user. And I think maybe the easiest way to make this point is to direct, Your Honors, to SPA 33, which is to be in the back of your blue book. It's the – it's – it was attached to Magistrate Parker's report and recommendation, so it should be at the very end. And what you see here in – on the left is the display that was approved by this Court in Meyer, and on the right you see the Barnes & Noble display. And the five – just sort of touching on the five factors that this Court looked at in Meyer, you see that like Meyer's, ours is uncluttered. If anything, as the Court below said, if anything, ours is less cluttered than the screen in Meyer. The text regarding the terms of use appears directly below the Submit Order button, so that was factor number two. You don't have to scroll to access the hyperlink. That's three. Four, it's easy to read. The text about the terms of use is in black. The hyperlink is in blue. It's contrasted against the white background. All easy to read. And fifth, the notice terms are temporally connected to an action taken by Ms. Bernardino, which is hitting the Submit Order button. All of that is, it seems to me, quite reasonable if we accept the Burgos affidavit as an accurate statement of what Ms. Bernardino would have seen. But there are at least two problems with that. One is the Burgos affidavit contradicts the Starrett affidavit as to what had happened. And the second is that Mr. Burgos has reconstructed this from this internal server. I don't know that I understand the technology well enough to know exactly what that means, but it sounds like that's not the server that hosted what Ms. Bernardino would have seen. It's one that, in Mr. Burgos' opinion and expertise, looks exactly like what the one or produces an image that is exactly what Ms. Bernardino would have seen. So it's not the quality assurance server, right? So you're right. It is not the exact server, but it is the server that was there at the time that is used to ensure that they know exactly what is going to be customer-facing. So it is the server that is, it's not the server she actually saw, but it is the server that used, it's not a recreation. Unlike Selden v. Airbnb, which was a recreation, a rendering from archived code, and that was deemed sufficient, this is significantly more compelling than that. This is what was at Barnes & Noble that was used to ensure that internally they knew what was going to be customer-facing. I forgive my ignorance, but what do you use a quality assurance server for internally? What do you do with it, if you can describe it? I think it's what you build the code, and I believe Mr. Burgos gets into this, but you make sure, you test the changes that are being made. So, you know, you make sure that all the changes that are being made look okay, and that's why Mr. Burgos, when he described the, I think it was the JIRA, J-I-R-A tickets, that those are the changes that are being made. So you have the server, it's the same as the server that is customer-facing, but they want to, if they're making changes, they want to make sure they test those changes in the internal server more externally. So this is what they use to test the changed interface, that apparently if it passes the test, the next step is you transfer that over to the consumer-facing thing. Correct. Correct. And, you know, it would seem to me that there is at least a possibility of some kind of glitch in the transfer. Now, again, that's a possibility. That's a speculation of sorts. But when we're talking about a summary judgment-like standard, I wonder whether particularly given the fact that your side didn't cover itself with glory in uncovering this at the last minute after having contended that it was equally clear and evident based on an affidavit of a different IT person from Barnes & Noble, that something entirely different is what the user would have seen at the time. Now, maybe this is a hypothetical kind of quibble because the other side didn't ask, let's depose all these people, let's really get to the bottom of it, let's have a hearing and find out who's right and who's wrong, and we are left, it seems to me, just having to make our best judgment based on the evidence that is there. Alito, did the district court clearly err in concluding that the Burgos affidavit is telling us what really happened? Exactly. This Court would have to find clear error. So that's why Your Honor said that. This Court would have to find clear error. As this Court noted earlier, we have never seen a submit order page coming from counsel, even though we have seen reams of pages coming from counsel with respect to the check-in page and all. Not one time in submit order pages is the page that is where Ms. Bernardino agreed to the terms of use. Not one. They had screen grabs many days. We know that. We've seen them. Yeah. And they had this screen grab before the Starrett affidavit. Is that right? Does the date on this predate the Starrett affidavit? Because if it postdates the Starrett affidavit, I think we'd have a very different situation because then we could say, well, it was your, you know, affidavit that turned out to be an error that led them to focus on this page. It's confirmed from you that it's before. Yeah. But this was before that. So I'm perfectly happy to accept Mr. Barnes's word that they didn't have. They never looked at the other page. But, in effect, that's on them. They could have looked at whatever pages they were looking at at that at the time that they made these screen shots. They weren't misled into that by anything in the Starrett affidavit. But I just want to make very clear. Mr. Burgos took screen shots of what plaintiffs would have seen. Yes. And that is, right, and that is what this Court concluded below. And so to overturn that, this Court would have to find clear error on those findings. Thank you very much. Thank you, Your Honors. Paragraph 16 of the Burgos Declaration on A479 contains an admission that what they submitted to the Court was not actually what a user would have seen. He says the text, some of the text in that, only appears in the quality assurance server. I'd also note, Your Honor, so that's paragraph 16. Doesn't all of it only appear in the quality? They don't have anything else but the quality assurance server. Well, and that's a problem, Your Honor, because they don't have what was actually consumer-facing. And there was a statement that this was not a real application. And you would have had the opportunity, it seems to me, if you had asked for it, to explore this assertion that whatever would have been seen exactly mirrors the quality assurance server, because you would have had the opportunity to go into, was there any possibility the code had changed after the quality assurance server, as it now exists, was last touched? How do we know for sure that the consumer-facing server produced the exact outcome? But we didn't have any of that further exploration. That is correct, Your Honor. There was not the further exploration. We thought that on the evidence as it existed we had enough that we should have prevailed and we stood on the evidence that we had. Another point I wanted to address is the statement was made that this was not a recreation. That contradicts what's actually in the Burgos Declaration. At A-477, paragraph 12, Mr. Burgos says, this makes it possible to recreate in a test environment. Recreating in a test environment, Your Honors, we assert is not enough to prove the existence of what the screen would have looked like at the time. It has to come from a consumer-facing server. Why would that be? If the evidence that the consumer-facing server no longer exists, a court, a jury, a judge, whoever is the fact finder, would have to make a finding based on the best available evidence and it would be perfectly open, it seems to me, to a fact finder to say, I'm not convinced by the circumstantial evidence, but I'm not sure I understand why it wouldn't be also open to a fact finder to say, based on the circumstantial evidence, based on what's there, it is more probable than not that the thing that Mr. Burgos has recreated is a fair and accurate depiction of what Ms. Bernardino would have seen on the date in question. What would be, why is it impossible to accept that, for a reasonable fact finder to accept that? Because they have to show what the consumer actually would have seen, not from internal documents that don't go to consumer-facing servers. They concede this is a recreation. They concede this is the actual evidence no longer exists. So? I mean, that happens every day in every courtroom in the country. It's an inference. It's an inference. It's an inference from the available evidence. And we have a purported expert who, again, if he had been cross-examined, might have turned out to be totally incompetent. What do I know? But that didn't happen. The affidavit that we have says you can count on this. And if he had testified, as he did under oath, but had testified in open court, been cross-examined, a fact finder would make a credibility judgment. Do I believe that he's accurate in what he says? And if he is, then we have a reliable basis to know what the consumer would have seen. If not, not. And, Your Honors, you stated that it was an inference. And on an inference, all reasonable inferences go to the party opposing the motion in this circumstance. No. Go to the party opposing a motion for summary judgment, and then what follows? What follows is an actual hearing. What follows is an actual trial, not on the merits, but a trial on whether it's arbitrable or not. That's what would have happened if you had asked for it, or should have happened if the judge said no. Then you could appeal that. As sometimes happens, I've lost my second point that I intended to make. If the Court would indulge, I would, but it's up to you, Your Honor. Well, did you want to respond to my colleague? Am I wrong about that? If the question, to make it as clear as possible as a question, if there was disputed evidence about what the consumer would have seen, would not the appropriate next step be to have a trial to resolve the factual question of what the consumer would have seen on which turns the question arbitration or no? Isn't that what happens? That is one option, Your Honor. We thought that based on the evidence before the Court, we should have won on the evidence before the Court. Right. And obviously, we can – I could backseat drive now and we could have done it in a different way, but we could have done it this way. I understand that point. But that is still asking us to rule on what is the best conclusion, or at least what – I think the appropriate standard, as Ms. Goldstein says, is was the district court's conclusion clearly erroneous, given that the district court was asked to make a decision about what this evidence shows. That's what the district court was asked to do, and that's what we're reviewing is the district court's conclusion, again, assuming we have jurisdiction, about what the evidence actually shows. And I think there's two questions there. One is the clear error as to whether it's accurate. And the other is, is your procedural – you also have your procedural issue. There's that issue, too, Your Honor. Thank you both for your arguments. Thank you. It's a matter under advisement and well-argued on both sides.